**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| In re:<br><br>EAST COAST INVEST, LLC,<br><br>        Debtor. | Case No. 19-20513-PGH<br><br>Chapter 7 |
| EAST COAST INVEST, LLC,<br><br>        Plaintiff/Counter-Defendant,<br><br>v.<br><br>GDF PROPERTIES, LLC, a Florida limited liability company,<br><br>        Defendant/Counter-Plaintiff. | Adv. Proc. No. 19-01622-PGH |

**GDF PROPERTIES, LLC'S RESPONSE IN OPPOSITION**
**TO MOTON TO DISMISS AMENDED COUNTERCLAIM**

**GDF PROPERTIES, LLC** ("GDF"), by and through its undersigned counsel, hereby files this *Response in Opposition to Motion to Dismiss Amended Counterclaim* ("Response") and respectfully states as follows:

**PRELIMINARY STATEMENT**

On February 6, 2020, the Chapter 7 Trustee filed the *Amended Complaint for Declaratory Relief and, in the alternative, to Avoid a Contract, Including a Purchase Option Contained Within Such Contract* [Adv. Doc. # 30] (the "Amended Complaint"). Thereafter, Defendant GDF filed its *Answer, Affirmative Defenses an Counterclaim in Response to Amended Complaint for Declaratory Relief and, in the alternative, to Avoid a Contract, Including a Purchase Option*

*Contained Within Such Contract* [Adv. Doc. # 35] (the "Counterclaim"), in which GDF asserts claims for specific performance and breach of contract.

On March 3, 2020, the Trustee filed the *Motion to Dismiss Amended Counterclaim by GDF Properties, LLC Against East Coast Invest, LLC* [Adv. Doc. # 37] (the "Motion to Dismiss"). Rather than arguing that GDF has failed to plead the elements necessary to sustaining viable causes of action in the Counterclaim, the Trustee argues that the Counterclaim should be heard in the main case as part of a pending *Motion to Reject Option Agreement* [ECF No. 10] (the "Rejection Motion"), which was filed by the Receiver while this case was pending under Chapter 11, and the *Objection to Motion to Reject Option Agreement* [ECF No. 71] (the "Objection"), which was filed by GDF[1], in part, due to the argument that the Receiver did not have standing to pursue the Motion to Reject. The Trustee acknowledges that the underlying Option Agreement (or Purchase and Sale Agreement) have been rejected by operation of law. Thus, the only issue post-rejection is the remedy to which GDF is entitled as a result of the Trustee's breach.

The Counterclaim contains compulsory claims arising out of the same transaction and occurrence of the underlying claims asserted in the Amended Complaint. Consequently, the Counterclaim is properly before the Court, and in light of the fact that the Trustee does not contest whether GDF has properly pleaded such claims, the Motion to Dismiss should be denied.

## BACKGROUND

### A.    The Option

1.    On or about August 6, 2018, GDF entered into an *Option Agreement* with the Debtor (the "Option Agreement"). In accordance with the Option Agreement, GDF was granted an option (the "Option") to acquire the primary asset of the Debtor, consisting of a 6.22-acre parcel

---

[1] *See* footnote 2, *infra.*

of primarily undeveloped commercial land located in Pembroke Park, Florida (the "Real Estate"). The Option was granted for valid consideration and followed the issuance of an opinion letter from Debtor's then counsel that the Option was duly authorized.

2.      By letter dated January 14, 2019, GDF timely exercised the Option and presented a "Purchase and Sale Agreement" (the "PSA") for execution by Mr. Barry Mukamal, the acting receiver ("Receiver") appointed in an action pending before the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, case styled *Igor Mikhaylov, et al. v. Anatoly Zinoviev,* Case No. 18-029719-CA-43 (the "Mikhaylov Action").

3.      Rather than execute the PSA, the Receiver questioned whether he had the power to perform, and on January 25, 2019, the Receiver filed a *Motion for Instructions With Respect to Request to Exercise Purchase Option for Real Estate* (the "Instructions Motion") in the Mikhaylov Action.  The Instructions Motion was never fully adjudicated.  On February 18, 2019, GDF filed a complaint for breach of contract and specific performance, case styled *GDF Properties, LLC v. East Coast Invest, LLC*, Case No. 19-003828 (the "GDF Action").

**B.      The Chapter 11 Case**

4.      Nearly six (6) months later, on August 6, 2019, the Receiver commenced this Chapter 11 case.

5.      Immediately thereafter, on August 7, 2019, the Receiver filed a *Motion to Reject Option Agreement* [ECF No. 10] (the "Rejection Motion"), in which the Receiver sought authority to reject the Option Agreement as an executory contract. In response, on October 9, 2019, GDF filed its *Objection to Motion to Reject Option Agreement* (the "Objection"). In support of the Objection, GDF argued that (a) the Rejection Motion was premature, since it was the Receiver – on behalf of the Debtor – who filed the Rejection Motion and also sought authority to exercise the

rights and powers of a debtor-in-possession[2]; (b) GDF was entitled to specific performance; (c) the Receiver had unclean hands and, therefore, should not be afforded equitable relief in the form of rejection; and (d) as an alternative remedy to the request for specific performance, GDF was entitled to a monetary claim for damages.

## C.     The Adversary Proceeding

6.     On September 26, 2019, the Receiver, purportedly acting on behalf of the Debtor, filed the *Complaint for Declaratory Relief and, in the alternative, to Avoid Purchase Option* [Adv. ECF No. 1] (the "Initial Complaint"). In the Initial Complaint, the Debtor pursued a declaration that the Option was invalid, since the Debtor allegedly did not have authority to grant the option in the first instance.[3]  The Receiver also sued to avoid the underlying option on various fraudulent transfer theories. Thereafter, on October 28, 2019, GDF filed its *Answer, Affirmative Defenses and Counterclaim* [Adv. Doc. # 5 and # 6].

7.     Following the conversion of this case from Chapter 11 to Chapter 7 and the appointment of the Chapter 7 Trustee (the "Trustee"), the Trustee obtained authority to substitute as plaintiff in this adversary proceeding and then subsequently proceeded to file the *Amended Complaint for Declaratory Relief and, in the alternative, to Avoid a Contract, Including a Purchase Option Contained Within Such Contract* [Adv. Doc. # 30] (the "Amended Complaint").

---

[2] On August 6, 2019, the Receiver filed the *Motion to (1) Recognize Powers and Duties of Receiver, (2) Set Compensation for Receiver, and alternatively, (3) Excuse Receiver From Compliance With Turnover Requirements Pursuant to 11 U.S.C. § 543(d)(1) Nunc Pro Tunc* [ECF No. 4], in which the Receiver sought "an order: (i) recognizing that the Receiver is exercising the powers and duties of a debtor-in-possession in this Chapter 11 case …." The Receiver's request for authority to exercise the powers as a debtor-in-possession was subsequently denied by the Court.

[3] This despite the fact that pre-petition counsel for the Debtor opined that the option was properly authorized.

8.      In the Amended Complaint, the Trustee, for the first time, challenged the underlying validity of the Option Agreement based on the alleged timing of consideration paid by GDF in exchange for the grant of the Option[4].

9.      In response to the Amended Complaint, GDF filed the Counterclaim.

## THE MOTION TO DISMISS

10.      On March 3, 2020, the Trustee filed the Motion to Dismiss.

11.      In support of the Motion to Dismiss, the Trustee appears to argue: (a) the Counterclaim is unnecessary and the adversary proceeding should be consolidated with the litigation relating to the Motion to Reject and the Objection, since GDF allegedly seeks the same relief as is purportedly sought in the Objection; (b) in the event the Option is valid and, therefore, rejected, the rejection damages may be determined as part of the "main case" and, therefore, the Counterclaim, again, is not necessary; and (c) if the Option is determined to be invalid, then it is no longer necessary to determine the merits of the Counterclaim.

12.      The Trustee essentially seeks to dismiss the Counterclaim on the basis that the Motion to Reject and the Option can be determined as part of the main case, as opposed to the adversary proceeding, notwithstanding that the compulsory claims asserted in the Counterclaim were filed in response to the Amended Complaint.

13.      If true, however, then, as a preliminary matter, GDF questions why the adversary proceeding was commenced in the first instance. The Debtor, and now the Trustee by substitution and accession, filed the Initial Complaint and then the Amended Complaint.  The Counterclaim is comprised of compulsory claims asserted within the meaning of Fed.R.Bankr.P. 7013, since

---

[4] This claim was never asserted in the Mikhaylov Action, the GDF Action, the Motion to Reject or the Initial Complaint.

GDF's counterclaims for specific performance and breach of contract arise out of the same transaction and occurrence as the claims asserted in the Amended Complaint.

14.     Moreover, the Trustee neither challenges nor contests whether GDF has properly pleaded the necessary and substantive elements of the causes of action asserted in the Counterclaim.

15.     For these reasons, the Motion to Dismiss should be denied.

**A.**     **Specific Performance**

16.     Nevertheless, GDF respectfully submits that it properly asserts claims for specific performance.

17.     As a preliminary matter, the Debtor's rejection of an executory contract does not constitute a termination of the agreement. Rather, the rejection constitutes a breach of the agreement as of the petition date.

18.     In *Calumet Farm, Inc. v. Northern Equine Thoroughbred Productions, Ltd.*, 150 B.R. 403 (Bankr. E.D. Ky. 1992), the bankruptcy court cited to a then recent report of a working group of the National Bankruptcy Conference which focused on section 365. Specifically, the *Calumet* court noted, in part:

> [E]quitable remedies generally are unenforceable against the estate (subject to the exceptions noted hereinafter). . . . . There are certain exceptions however. The estate takes the debtor's property subject to whatever rights exist in the nondebtor party. When equitable remedies confer on the nondebtor party a right in or to *specific property* these remedies should be enforceable against the estate because they are the functional equivalent of a valid lien or security interest in personal property or a mortgage or estate in real property, under relevant nonbankruptcy law. Of course, like a lien, security interest, mortgage or estate, these remedies should be enforceable only if they can survive the bankruptcy's avoiding powers . . ..

*Id.* at 412 (quoting National Bankruptcy Conference Code Review Project Working draft at 172-73 (Sept. 1, 1992).

19.     Similarly, in *In re Bergt*, 241 B.R. 17 (Bankr. D. Alaska 1999), the bankruptcy court undertook a detailed discussion of whether the rejection of an executory contract, which results in a breach rather than a termination of the rejected contract, cuts off a non-debtor party's equitable remedy to specific performance. In *Bergt*, the bankruptcy court referenced and cited to law review articles written by Michael T. Andrew and Jay Lawrence Westbrook for the position that, "the nondebtor's rights in the property are not terminated by the rejection under § 365(a) alone, and they will persist if they would persist under state law." *Id.* at 22; *see* Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding 'Rejection,'* 59 U Colo L Rev 845 (1988) and Michael T. Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook,* 62 U Colo L Rev 1 (1991); *see also* Jay Lawrence Westbrook, *A Functional Analysis of Executory Contracts*, 74 Minn L Rev 227 (1989).

20.     The foregoing are essentially premised on the prevalent view that a rejection of an executory contract does not result in a termination of the agreement; rather, the rejection results in a breach of the agreement and, therefore, gives rise to remedies in favor of the non-debtor party under applicable state law.

21.     In discussing Florida law, The Honorable Robert A. Mark, in the case of *Blair 11D Condo, LLC v. Rabin (In re Rabin)*, 361 B.R. 282 (Bankr. S.D. Fla. 2007), noted that, "'[u]nder Florida law, a vendor's breach of a real estate contract gives rise to alternative remedies: the purchaser may (1) elect to sue in action at law for damages suffered as a result of the breach; or (2) the purchaser may elect to sue in equity to compel specific performance of the terms of the contract.'" *Id.* at 285 (quoting *Matlack v. Gaul*, Case No. 06-60299-CIV-Alonaga, September 22, 2006 *citing Miller v. Rolfe*, 97 So.2d 132 (Fla. 1st DCA 1957).

22.     Under 11 U.S.C. § 101(5)(B), a "claim" includes a "right to an equitable remedy for breach of performance *if such breach gives rise to a right to payment* …." (emphasis added). In view of Judge Mark's holding in *Blair 11D Condo*, and the fact the Florida law affords the non-breaching party an alternative remedy of monetary damages, ordinarily GDF would likely be limited to a claim for monetary damages.

23.     However, under the Option Agreement, a default by the Debtor entitles GDF to "seek specific performance of its rights under this [Option] Agreement." *See Option Agreement*, § 7.  Moreover, under the PSA, in the event of a default by the Debtor, GDF "may either: (a) terminate this Agreement [PSA] by giving written notice of termination . . .; or (b) enforce specific performance  of Seller's [Debtor's] obligation under this Agreement [PSA] and proceed to close this transaction." *See PSA,* § 11.1.

24.     Accordingly, in the event of a default by the Debtor (Receiver), GDF was entitled to (a) seek specific performance in the event of a breach of the Option Agreement, or (b) seek to terminate or compel specific performance in the event of a breach of the PSA. Consequently, GDF respectfully submits that it has a viable claim for specific performance.

25.     In summary, rejection of the Option Agreement/PSA did not terminate these agreements; rather, rejection constituted a breach of the Option Agreement and/or PSA and, therefore, GDF's rights and remedies remain intact under state law.

26.     Even though an equitable remedy for specific performance may constitute a "claim" under 11 U.S.C. § 101(5)(B), this is predicated on GDF possessing an alternative remedy at law, i.e., a claim for monetary damages. Again, however, both the Option Agreement and the PSA provide that GDF may seek to terminate the agreement and/or seek specific performance in the

event of a breach by the Debtor/Trustee.  It is on this basis that GDF's claim for specific performance survives the Motion to Dismiss.

**B.**    <u>**Claim in Lieu of Specific Performance**</u>

27.    On the other hand, if the Court determines that GDF is not entitled to specific performance, then GDF is entitled to assert a claim for breach of contract and monetary damages, since the Court would necessarily have to determine that GDF possesses an adequate remedy at law.

28.    "Under Florida law, damages for breach of contract must place the non-breaching party in the same financial position as he would have occupied had the contract been performed." *In re Waldron*, 36 B.R. 633, 642 (Bankr. S.D. Fla. 1984).  Consequently, GDF would be entitled to assert a claim for at least "the difference between the estimated market value of the property at the time the option becomes exercisable less the option agreement price, plus an additional speculative premium, if any, reflecting anticipated appreciation of the value of the property at the time the option will lapse . . . as well as any additional loss suffered . . . as the natural and proximate cause of the breach." *Id*.

29.    For purposes of the Motion to Dismiss, GDF has properly pleaded the necessary elements to sustain a cause of action for breach of contract.

<u>**PROCEDURAL STATUS**</u>

30.    The Trustee posits that the Counterclaim may be heard as part of the Motion to Reject and the Objection.  However, the Option Agreement and/or the PSA have been rejected by operation of law.  The issue to then be decided is the remedy to which GDF is entitled.  These remedies are asserted as part of the Counterclaim and, therefore, the compulsory claims set forth in the Counterclaim are properly before the Court.

31.     In the Amended Complaint, the Trustee seeks a declaration that the Option Agreement was void or, alternatively, that the Option may be avoided as a fraudulent transfer. Procedurally, GDF respectfully submits that the issue as to whether the Option is void should be determined first.  If void, then the inquiry ends; if not then the next issue should be whether the Option is a fraudulent transfer.  Again, if so, then the inquiry ends; if not, then the issue remaining is the remedy to which GDF is entitled as a result of the breach.

32.     By filing the Motion to Dismiss, the Trustee arguably seeks to circumvent the order in which the issues should be properly determined by the Court.

## **CONCLUSION**

33.     The Trustee does not argue that GDF has failed to plead the elements necessary to sustaining causes of action for specific performance and breach of contract.

34.     Instead, the Trustee raises a procedural argument in support of the notion that the compulsory claims asserted in the Counterclaim may be heard as part of the Motion to Reject and the Objection. However, the Trustee's argument fails to recognize (a) the likelihood that the Option Agreement and/or PSA have been rejected by operation of law, and (b) that rejection resulted in a breach rather than termination of the underlying agreements.  The Trustee does not recognize that GDF is able to assert whatever state law rights and remedies it may possess following breach.

35.     Furthermore, in light of the breach, GDF's claim for specific performance is not a "claim" under 11 U.S.C. § 101(5)(B), since GDF does not have an alternative right to payment under the applicable agreements.

35.     Even so, the issues raised by the Trustee are not properly before the Court on the Motion to Dismiss and, therefore, GDF respectfully requests that the Court deny the Motion to Dismiss.

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via Notice of Electronic Filing CM/ECF to those parties registered to receive electronic notices on the date filed.

> **I HERBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am qualified to practice in this Court as set forth in Local Rule 2090-1(A).

**SEESE, P.A**.
101 N.E 3rd Avenue, Suite 1270
Fort Lauderdale, FL 33301
Telephone: (954) 745-5897

By: /s/ *Michael D. Seese*
    Michael D. Seese
    Florida Bar No. 997323
    mseese@seeselaw.com

*Attorneys for GDF Properties, LLC*